PATRICK COURTNEY, Respondent, *v.* GAINSBOROUGH STUDIOS, Appellant.

First Department, March 7, 1919.

**Negligence — liability of owner of apartment house for injury to furniture-van helper by starting of elevator — evidence — when maxim of res ipsa loquitur not applicable — said maxim defined — erroneous instructions — contributory negligence of plaintiff's helper or companion.**

In an action by a furniture-van helper for personal injuries alleged to have been sustained while loading a dining table into an elevator in defendant's apartment house, it appeared that the only way of starting the elevator was by pulling the handle of the controller box out about one-fourth of an inch and then moving it either way, and when released a spring brought the handle back to neutral and stopped the car; that the controller was at the left of and about one foot from the entrance to the car; that in loading the table it was necessary to swing the side first entering the car to the left, with the legs extending in that direction; that while the plaintiff and his witnesses testified that the accident occurred as the plaintiff was entering the car, the defendant's elevator operator testified that plaintiff and his companion were already in the car and that it started and plaintiff received his injuries as he was in the act of leaving the elevator; that the defendant to meet any presumption of negligence arising from the occurrence of the accident proved, without contradiction, that the elevator was of modern design and equipment, and that immediately prior to and following the accident it was in perfect working order, and that when the elevator operator left the car and plaintiff and his companion entered, the control lever was in neutral and the only way in which the car could be moved was by the application of force upon the control handle. Defendant introduced expert testimony to show that it was possible to pull the handle out of neutral and push it forward by the application of just such force upon it as might have resulted from the leg of the table.

*Held*, that while the plaintiff might have relied upon the doctrine of *res ipsa loquitur* to establish a *prima facie* case, in the absence of any proof on defendant's part to overcome the presumption of negligence arising from

the occurrence of the accident itself, with the proof which was offered by defendant to meet such presumption, plaintiff could no longer rely upon said rule and the burden rested upon him in order to recover to show that his injuries resulted from some specific act of negligence on the defendant's part.

Since the plaintiff made no attempt to prove what caused the car to start or that it started by reason of any negligence on defendant's part, it was reversible error for the court to charge the jury that it need not determine the precise cause for the starting of the car, and that the mere happening of the accident, unexplained, constituted *prima facie* evidence of negligence.

The refusal of the court to instruct the jury that assuming that plaintiff had established a *prima facie* case by showing an accident, yet the only duty upon the defendant was to show that it exercised reasonable care and that there was no duty upon it to explain how the accident happened, constituted reversible error.

It was also reversible error for the court to refuse to charge the jury that if they believed that the person of either the plaintiff or his fellow-employee or the table caused the elevator lever to move and the elevator to start, then their verdict must be for the defendant, and that if they believed that the sole proximate cause of the accident was the act of the plaintiff and his fellow-employee in causing the lever to move and thereby start the elevator, their verdict must be for the defendant.

Negligence on the part of plaintiff's companion which might have been the proximate cause of the accident would have as effectually precluded a recovery as if plaintiff himself had been guilty of contributory negligence.

The maxim " *res ipsa loquitur* " means merely that where an accident occurs through some agency or instrumentality under the control of a defendant, and the plaintiff is injured, in the absence of explanation by defendant, the occurrence itself furnished *prima facie* evidence of want of care on defendant's part, which caused the accident. The happening of the accident itself raises a presumption of negligence. Such rule does not relieve a plaintiff from proving that his injuries resulted from negligence of the defendant, but merely goes to the character and degree of proof required under certain circumstances. Where the accident could not have occurred, except as the result of some negligence for which the defendant is responsible, then his negligence is presumed, and he is called upon to explain. But where it appears that the accident might have happened from causes for which defendant was not responsible, the presumption of negligence is destroyed, and the doctrine of *res ipsa loquitur* has no application.

APPEAL by the defendant, Gainsborough Studios, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 16th day of July, 1918, upon the verdict of a jury for $2,500, and also from an order entered in said clerk's office

on the 25th day of July, 1918, denying defendant's motion for a new trial made upon the minutes.

*Walter L. Glenney* of counsel [*Bertrand L. Pettigrew*, attorney], for the appellant.

*Warren A. Schenck* of counsel [*Ingram, Clark, Taylor & Schenck*, attorneys], for the respondent.

MERRELL, J.:

Plaintiff has recovered a verdict for $2,500 for personal injuries sustained through an accident which occurred on September 18, 1916, in connection with a freight elevator in defendant's apartment house in New York city.

Plaintiff was a furniture-van helper in the employ of the Manhattan Storage and Warehouse Company, and on the day in question, about five or half-past five o'clock in the afternoon, went to the defendant's apartment house with a load of furniture to be delivered there. The furniture was to be delivered upon an upper floor of the apartment house, which was reached by means of an elevator. Upon arriving at the apartment house, plaintiff and a fellow-employee first carried in a round-top dining-room table about four and one-half feet in diameter. A signal was given calling the elevator car, which was brought down, the door opened, and the elevator operator stepped out, directing plaintiff and his companion to load up. The elevator was an Otis freight elevator of passenger type, and was electrically operated. The apparatus was of modern design, and the evidence shows that immediately before the accident the elevator was in perfect working order. The dimensions of the elevator car were four feet in depth by about five and a half feet in width. Entrance to the car was by a door at the right-hand side, said door being three feet eight and one-half inches wide and about six and one-half feet high. The operation of the car was controlled by means of a short lever moving back and forth on an arc upon a controller box placed inside the car at the left of and about one foot from the door as one entered the car. When the handle of the controller was upright, it was in neutral, and stood about sixteen inches from the door jamb. This controller handle projected about six inches from the side of the car, and when

upright or in neutral the handle dropped into a notch, and to start the car it was necessary to pull the handle out about a quarter of an inch, when it could be moved on the arc either toward or away from the door. When released a spring brought the handle back to neutral and stopped the car. To move the car upward the handle was moved to the left or toward the door, and to lower the car the handle was moved from neutral to the right or away from the door. Ordinarily the car was operated by means of said handle control by an employee of defendant. The only other manner in which it could be moved was by means of an independent device situate in the basement of the building, by means of which it could be moved up or down independently of the control in the car itself. The undisputed evidence showed that the basement control, at the time of the accident, was under double lock and key, and that the car was not started from that source. The elevator operator who brought the car down just before plaintiff and his helper started to load, testified that the apparatus was working perfectly and that when he stepped out of the car and told the plaintiff and his companion to load up, the control was in neutral. No evidence was offered tending to show that the elevator was at the time out of repair or otherwise than in perfect working order.

When plaintiff and his companion were directed by the elevator operator to load up, they started to place the dining table in the car. To do this the table was turned on edge, plaintiff's helper, Murphy, having hold of one side, backed into the car, and plaintiff, supporting the other side of the table, followed, starting to walk forward into the car. The top of the table was polished and the men were concerned lest the top be scratched in getting the table into the car, and testify as to the care used to avoid marring the polished top. Plaintiff testifies that as the table was carried through the door edgewise, the legs extended toward his left. While Murphy is quite positive that the legs pointed in the opposite direction, and that the top of the table was to plaintiff's left, I think he was mistaken, and that plaintiff was clearly right. As the table was wider than the car, it was necessary to swing the side first entering the car to the left in order to get it into the car. As the door was at the right-hand

First Department, March, 1919.         [Vol. 186.

side of the car, the natural way to take the table into the car would be with the legs extending to the left or into the main open space of the car and where there was plenty of room to swing them around, the men being principally concerned in avoiding marring the polished top. The evidence shows that Murphy had backed into the car, bearing his side of the table, which went into the car " cattecornered," as described by one witness, Murphy apparently moving to his right that the table might be gotten into the elevator car, and as plaintiff was following, bearing his edge of the table, and started to pass through the door, and before he was fully inside, the car, from some cause not clearly explained, suddenly started upward with a jerk and plaintiff, with one foot inside the car and the other out, was struck upon the head by the floor above as the car rapidly ascended and he was thrown violently forward into the car and two of the legs of the table which were not fully within the car were broken either by the contact with the floor or from plaintiff's falling upon them. The car came to a stop, according to plaintiff's witness Murphy, between the second and third floors, and, according to defendant's witnesses, when it reached the top of the doorway, at the first floor. Plaintiff was rendered unconscious by the blow upon his head and suffered very serious injuries. After the car came to a standstill it was lowered to the basement by means of the said device there. So far as the evidence shows, the elevator was in perfect working order immediately after the accident.

While, as above stated, the plaintiff and his witnesses testified that the accident occurred as the plaintiff was entering the car, defendant's elevator operator testified that plaintiff and Murphy were already in the car and that the car started and plaintiff received his injuries as he was in the act of leaving the elevator, and the elevator operator is, in a way, sustained in his version as to when the accident occurred by the rather remarkable circumstance that when shortly after the accident plaintiff filed with his employer a sworn claim for compensation, he described the accident as follows: " My accident happened in the following manner: When taking table off elevator, elevator started and I was caught between the elevator and the table and the door."

It is perhaps not of much importance, so far as this appeal is concerned, whether the accident happened as plaintiff was entering the car, or whether it occurred as he was getting off. The main question is whether, under the facts proven, plaintiff has established a cause of action by reason of defendant's negligence. The learned trial court submitted the case to the jury under the doctrine of *res ipsa loquitur.* The jury was instructed that it was not to determine the precise cause for the starting of the car, and that the mere happening of the accident, unexplained, under the circumstances, if the version of the accident given by plaintiff and Murphy be accepted as true, was *prima facie* evidence of negligence on defendant's part, for which plaintiff might recover, and this, though the jury might not be able to put its finger upon the precise item of negligence.

Inasmuch as the elevator was an instrumentality under the control of and provided by defendant for the purposes for which plaintiff, under defendant's invitation, was using it, the defendant was in duty bound to keep it in a reasonably safe condition for such use, and in the absence of evidence showing that the car might have been started and caused to shoot upward from some cause for which defendant was not responsible, the accident itself might have raised a presumption of want of care on defendant's part which caused the accident. But under the proofs presented, I do not think that the plaintiff could rely upon the mere happening of the accident as proof of defendant's negligence. The defendant, to meet any presumption of negligence arising from the occurrence of the accident, proved, without contradiction, that the elevator was of modern design and equipment, and that, immediately prior to and following the accident, it was in perfect working condition in all its parts. The defendant further proved that it was a physical impossibility to start the elevator car, except in one of two ways, either by means of the device located in the basement or by manipulation of the control inside the car itself. By proof that the basement control was inaccessible, being under double lock and key at the time of the accident, that possible source of the car's starting was eliminated, and there remained, as the only means by which the car could have been started, the operating

control within the car. Defendant proved, by the uncontradicted testimony of its elevator operator, that when he left the car and plaintiff and Murphy entered, the control lever was in neutral. When the lever was in neutral the car was always at a standstill, and could only be started by pulling it out of the notch and moving it forward or backward from the perpendicular or neutral position. And defendant further proved that the only way the car could be caused to move upward was by the application of force upon the control handle, pulling it out of the notch in which it rested at neutral, and to which, by means of a spring, the handle always returned when released, and then moving the handle on the arc toward the door. Just before the car started upward the only persons in the car or within reach of the control were plaintiff and his helper, Murphy. Defendant's elevator operator was not within the car nor within reach of the control, and it is not suggested that any employee of defendant started the car. If the car was caused to start by reason of interference with the control lever, it must have been caused by some act of plaintiff or Murphy, either intentional or inadvertent, and for which defendant was not shown to have been responsible.

The evidence shows that just as the car started and as the table was being carried into the car and placed around in a diagonal position in order to get it into the car, Murphy, plaintiff's helper, must have been in close proximity to the control lever, and that the legs of the table protruded toward the control box, and quite possibly that the control handle may have been started by contact of Murphy's body or the protruding table legs with the handle, forcing it out of its neutral notch and toward the door of the car with resultant movement of the car upward. The defendant introduced expert testimony to show that it was possible to pull the handle out of neutral and push it forward by the application of just such force upon it as might result from the leg of a table, which was being carried into the car in the manner this table was being handled, pressing against the control lever. To show such possible cause of the car's starting on the occasion of plaintiff's injury, defendant called as an expert witness one Marshall, a consulting engineer of thirty-five years' experience in elevator construction. For twelve years,

first as a mechanic and finally as superintendent of construction, said expert had been connected with the Otis Elevator Company, the manufacturer of the elevator upon which plaintiff was injured. He testified that he had examined defendant's elevator, upon which plaintiff was injured, since the accident, and found it in very good care and condition. The expert further testified that by actual experiment made upon defendant's said elevator car the night before testifying, he found that by pressing his hand " just right " against the side of the control handle, as the leg of a table might rest against it, and without putting the hand around it, he could pull the control handle out of the notch at neutral, and move it.

While plaintiff might have relied upon the doctrine of *res ipsa loquitur* to establish a *prima facie* case, in the absence of any proof on defendant's part to overcome the presumption of negligence arising from the occurrence of the accident itself, with the proof which was offered by defendant to meet such presumption of negligence, in the case, plaintiff could no longer rely upon the rule of *res ipsa loquitur*, and the burden rested upon him, in order to recover of defendant, to show that his injuries resulted from some specific act of negligence on defendant's part. The plaintiff made no attempt to prove what caused the car to start or that it started by reason of any negligence on defendant's part, and the court, as before stated, charged the jury that it need not determine the precise cause for the starting of the car, and that the mere happening of the accident, unexplained, constituted *prima facie* evidence of negligence. Such instruction was, I think, clearly erroneous. Under the evidence in this case the rule of *res ipsa loquitur* was inapplicable, and furnished plaintiff no basis for a recovery of damages against defendant.

The maxim " *res ipsa loquitur*," literally translated, " The thing speaks for itself," means merely that where an accident occurs through some agency or instrumentality under the control of a defendant, and the plaintiff is injured, in the absence of explanation by defendant, the occurrence itself furnishes *prima facie* evidence of want of care on defendant's part, which caused the accident. The happening of the accident itself raises a presumption of negligence. Such rule does not relieve a plaintiff from proving that his injuries resulted

from negligence of the defendant, but merely goes to the character and degree of proof required under certain circumstances. Where the accident could not have occurred, except as the result of some negligence for which the defendant is responsible, then his negligence is presumed, and he is called upon to explain. Where it appears, as I think it does in this case, that the accident might have happened from causes for which defendant was not responsible, the presumption of negligence is destroyed, and the doctrine of *res ipsa loquitur* has no application. Not only does the evidence in this case show that the accident might have occurred from causes other than defendant's negligence, but it points quite irresistibly to the conclusion that the carelessness of plaintiff or his helper, Murphy, caused the car to start. The *res* is not alone the accident, but includes all attendant circumstances, and therefrom it appears that the accident might have occurred from causes for which defendant was in nowise responsible. (*Robinson* v. *Consolidated Gas Co.*, 194 N. Y. 37; *Keenan* v. *McAdams & Cartwright Elevator Co.*, 129 App. Div. 117; *Hardie* v. *Boland Co.*, 205 N. Y. 336; *Duhme* v. *Hamburg-American Packet Co.*, 184 id. 404; *Griffen* v. *Manice*, 166 id. 188.)

We are, therefore, of the opinion that in holding the rule of *res ipsa loquitur* applicable to the facts as developed upon the trial of this action, and in submitting the case to the jury upon such theory, the learned trial court committed error prejudicial to defendant's rights, and for which there must be a reversal of the judgment recovered.

In the main charge the court instructed the jury as follows: " The mere happening of the accident, unexplained, under the circumstances, if their evidence is true and you accept the version I have just mentioned to you that they gave, is *prima facie* evidence of negligence; and though you may not think that the mere happening of the accident, unexplained, under the circumstances that I referred to is *prima facie* evidence of negligence, and though you may not be able to put your finger upon the precise item of negligence, nevertheless that would be *prima facie* evidence of negligence and you would have to consider that evidence."

Exception to such charge was taken by defendant and in

that connection counsel for defendant asked the court to instruct the jury that assuming the plaintiff had established a *prima facie* case by showing an accident, yet the only duty upon the defendant was to show that it exercised reasonable care, and that there was no duty upon the defendant to explain how the accident happened. Such request was refused, and to the refusal to charge as requested defendant duly excepted. I think defendant was entitled to the charge requested, and that the court's denial constituted reversible error. (*Klein* v. *Fraser*, 169 App. Div. 812.)

I think further reversible error occurred upon the trial by reason of the refusal of the court to charge the jury that if they believed that the person of either the plaintiff or his fellow-employee, or the table, caused the elevator lever to move and the elevator to start, then their verdict must be for the defendant; and that if the jury believed that the sole proximate cause of the accident was the act of the plaintiff and his fellow-employee in causing the lever to move, and thereby starting the elevator, their verdict must be for the defendant. The trial court refused to charge the jury as thus requested, charging merely that the burden was upon the plaintiff to prove that he was free from contributory negligence, to which refusal the defendant duly excepted. The request was pertinent under the evidence, as negligence on the part of his helper, Murphy, which might have been the proximate cause of the accident, would have as effectually precluded a recovery as though plaintiff himself had been guilty of contributory negligence. The defendant was clearly entitled to have the jury charged as requested, and the court's refusal constituted reversible error.

For the reasons hereinbefore stated, the judgment and order appealed from should be reversed and a new trial ordered, with costs to the appellant to abide event.

CLARKE, P. J., LAUGHLIN, DOWLING and SMITH, JJ., concurred.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.